### E. B. KAISER CO., a Corporation
### v.
### UNITED STATES.
### No. 425-58.

United States Court of Claims.

Jan. 20, 1960.

Thomas F. Dolan, Chicago, Ill., for plaintiff.

Earl L. Huntington, Arlington, Va., with whom was Asst. Atty. Gen. George Cochran Doub, for defendant.

JONES, Chief Judge.

This is a suit by a subcontractor for an additional fee in a cost-plus-fixed-fee subcontract. The subcontract was later assigned to the Government.

Plaintiff alleges that it is entitled to an additional fee on the ground that it was required to do certain work outside the scope of the contract and that the contracting officer acted arbitrarily in denying the plaintiff's claim for an additional fee.

The prime contractor was the Esslinger-Misch Company. The subcontract was between the prime contractor and plaintiff, E. B. Kaiser Co.

The case is before the court on a special act of Congress which grants to the United States Court of Claims the authority to pass upon the merits and to render final judgment. It is provided, however, in this special act "That the enactment of this legislation shall not be construed as an inference of liability on the part of the United States Government."

The trial commissioner William E. Day, heard the testimony and has filed his findings of fact in detail which we have approved and adopted.

The prime contract was entered into on March 20, 1942, and provided for the construction of an ordnance plant near Terre Haute, Indiana. The plant was to consist of loading buildings, administra-

tion buildings, shops, railroads, steam lines, air lines, electric lines, telephone lines, and other equipment. The total cost of the completed plant was to be more than $20,000,000.

In the light of the need for completion of the project, which was to be used in the manufacture of munitions for use during World War II, the prime contractor obtained permission to let a subcontract on a cost-plus-fixed-fee basis for the installation of the plumbing, heating, ventilating, and compressed air systems. The estimated cost as disclosed in the invitation to bid was the sum of $1,988,984, including labor and materials.

At the time the invitation to bid and the plot plan were furnished the plaintiff, sufficient drawings and specifications were not available to enable the prime contractor to ask for bids on a lump-sum basis. It was well known that several months would be required for the preparation of complete drawings and specifications. In view of the urgent need for the completion of the project, the prime contractor, in order to save time, asked for and received permission from the defendant, in accordance with Article I–A (4) (a) of the principal contract, to let the subcontract for the installation of the plumbing, heating, ventilation, and compressed air systems at the Vigo Ordnance Plant on a cost-plus-fixed-fee basis.

Plaintiff, along with other bidders, was furnished a copy of such plans as were available, including a plot plan of the general layout of the entire ordnance plant. In addition, the defendant's architect-engineer for the project furnished plaintiff an estimate as to the cost of all labor and materials for the installation of the plumbing, heating, and ventilation systems. The plaintiff submitted a fixed fee in the sum of $45,000 to include tools, and equipment for the installation of the plumbing, heating, ventilation and air piping at the Vigo Ordnance Plant near Terre Haute, Indiana.

The subcontract dated July 21, 1942, contained a description of the work as follows:

"The Subcontractor shall in the shortest possible time furnish under the general supervision of the Constructor (Contractor) the labor, materials, tools, machinery, equipment, facilities, supplies, and services not furnished by the Constructor (Contractor) or the Government and do all things necessary for the construction and completion of the following work:

"To construct, install and complete all plumbing, heating, ventilating and compressed air systems in six (6) Detonator Lines, four (4) Artillery Primer Lines, one (1) Percussion Element Line, in the Maintenance Area, and in the following buildings in the Administration Area: Staff Houses, Fire and Police Building, Laboratory, Telephone and Cafeteria Building."

The prime contractor furnished the materials to the plaintiff and the plaintiff was reimbursed for all the amounts paid to employees except the salary of the general superintendent. The subcontract stipulated that plaintiff would furnish the general superintendent on a nonreimbursable basis.

There is no issue as to the cost of labor and materials. It is plaintiff's contention that it was required to do a great deal more work than the subcontract provided should be done, and it was required by the contracting officer to do work outside the scope of the contract, and that consequently its fixed fee for supervising work, which had been placed at $45,000, should be increased by an additional sum of $43,477.50 (later reduced by adjustment payments to $40,722.50).

The plaintiff claimed that extra work on the boiler houses, high pressure steam lines, sewage disposal plant and water treatment plant, pump plant, and reservoir was not included in the work called for by the contract, largely on the basis that the power houses and steam lines involved power rather than heating, and that, normally, heating systems do not include steam beyond 15 pounds working pressure. He claimed that the fixed fee

should be proportionately increased in sufficient amount to cover this extra work. The area engineer denied the claim for additional fixed fee, except certain small items which were involved in change orders as set out in finding 20. The contracting officer allowed some $3,000 additional fixed fee covering certain change orders, but held that the remaining items were included within the terms of the contract itself.

We quote a portion of the contracting officer's statement of basis of denial:

"the boiler houses and steam lines are integral parts of one or the other of the systems referred to in the Subcontract; that while the steam generated in these boiler houses is in excess of fifteen pounds working pressure, it is used solely for heating purposes and not for generating of power * * *."

The decision was approved and the Acting Chief of Engineers found that the boiler houses and steam lines were a part of the plumbing and heating work described in the subcontract and within the scope thereof, and that, since the subcontract provides that no adjustment in the fixed fee would be made because of the errors or omissions in estimating the cost of the work, no further increase could be granted, other than items 2 and 3 involving the sewage disposal and water plants. The allowance of these adjustments reduced the claim to the net sum indicated above.

Plaintiff accepted these small additional allowances for work done on the sewage disposal and water treatment plants but did so under protest claiming that it was entitled to a much larger fee.

By virtue of the assignment of the subcontract to the defendant that had been made on June 4, 1943, the defendant had assumed responsibility for the claims previously filed by defendant with the prime contractor. The subcontract contained the following provision:

"Provided, however, that there shall be no adjustment in the amount of the fixed fee as provided herein, nor any claim therefor because of

any errors and/or omissions made in computing the estimated cost of the construction of the work under this subcontract, or where the actual cost varies from the estimated cost."

As to the larger items in the claim of plaintiff relating to boiler houses and high pressure steam lines, the plot plan, which is in evidence as plaintiff's exhibit No. 7, shows a total of five boiler houses, three in the detonator line areas and two in the artillery primer line areas. Our trial commissioner, who heard the evidence, found that plaintiff "has failed to establish by clear and satisfactory evidence that the boiler house and high pressure steam line work was outside the scope of its subcontract work."

The trial commissioner likewise found that plaintiff had failed to establish by clear and satisfactory evidence that it had not been fully paid for the extra work performed by it on the sewage disposal plant and the water treatment plant, and that the estimates of cost relied upon by the plaintiff as to these items included major items of equipment which were not installed by the plaintiff's employees. After full consideration of the record, we have adopted these findings.

We have considered the findings of the contract engineer, Captain Bailey, pertinent portions of which are set out in finding 22, and the findings of the Acting Chief of Engineers, portions of which are set out in finding 24, and we find no evidence of arbitrary or capricious action on the part of these officials. In fact, their decisions are apparently based on the provisions in the subcontract and the facts as disclosed by the evidence.

The plaintiff is not entitled to recover and the petition is dismissed.

It is so ordered.

REED, Justice (Retired), sitting by designation, LITTLETON, Judge (Retired), LARAMORE and MADDEN, Judges, concur.

WHITAKER, Judge, took no part in the consideration and decision of this case.